MATTHEW NORVILLE, SR., Petitioner, v. THE DEPARTMENT OF HUMAN RIGHTS *et al.*, Respondents.

Second District No. 2—02—0280

Opinion filed July 7, 2003.

Matthew Norville, Sr., of Batavia, petitioner *pro se.*

Lisa Madigan, Attorney General, of Chicago (Carl J. Elitz, Assistant Attorney General, of counsel), for respondent Department of Human Rights.

Daniel A. Kaufman and Sarah A. Bible, both of Michael, Best & Friedrich, L.L.C. of Chicago, for respondent Franciscan Ministries, Inc.

JUSTICE KAPALA delivered the opinion of the court:
*Pro se* petitioner, Matthew Norville, Sr., filed a charge of familial status discrimination (775 ILCS 5/3—101 *et seq.* (West 2000)) against respondent Franciscan Ministries, Inc. (Franciscan Ministries), alleg-

ing that Franciscan Ministries refused to rent a three-bedroom apartment to him because of the number of children he and his wife had who were under 18 years old. Respondent Illinois Department of Human Rights (Department) initially dismissed the charge for lack of substantial evidence. On review, the chief legal counsel (CLC) for the Department vacated the dismissal and reinstated the charge "for further work as necessary and other proceedings by the Department." The Department again dismissed the charge for lack of substantial evidence, and on review, the CLC sustained the dismissal, finding that "[t]here is no evidence that Respondent [Franciscan Ministries] refused to rent to Complainant because of Complainant's familial status." Petitioner timely appealed from this order.

## FACTS

Petitioner and his wife had eight children when he commenced proceedings against Franciscan Ministries. During the pendency of the proceedings, his wife gave birth to their ninth child. Petitioner's family thus consisted of 11 people, with 8 of the 9 children being under the age of 18. Franciscan Ministries owned the Assisi Homes Batavia Apartments, Inc., a 290-unit apartment complex in the City of Batavia, in Kane County. The Department's fact investigation revealed the following. In or about April 2000, petitioner met with a representative of Franciscan Ministries in Wheaton. Petitioner explained that he and his family had recently been evicted from their previous housing and that his family consisted of his wife and eight children. The housing agent replied that the largest apartment that might become available was a three-bedroom unit. The agent further stated that the three-bedroom apartment was not large enough to accommodate 10 people. When petitioner told the agent he believed his family could fit into the unit, the agent responded that it was not a matter of fitting into the apartment; the concern was Franciscan Ministries' policy limiting the number of persons who occupied a dwelling.

The Department verified that the occupancy standard for the three-bedroom apartments was seven individuals. The site occupancy standards documented a total of 290 units, 29 of which were 3-bedroom units. Only 2 of those 3-bedroom units had no children; 7 had 2 children; 11 had 3 children; and 3 had 5 children. Overall, approximately 90% of all the units in the complex were occupied by families with children. The Department also learned that Franciscan Ministries received federal assistance and that the federal regulations required Franciscan Ministries to meet federal housing guidelines, which included at least one bedroom or sleeping room of appropriate size for each two persons. The physical inspection of the three-bedroom

units confirmed that one bedroom was 91 square feet, the second was 108 square feet, and the third was 144 square feet. The entire area of a three-bedroom unit totaled 1,082 square feet. Each had one bathroom and no other area that could be converted for use as extra sleeping space. The Department also verified that neither the City of Batavia nor Kane County had occupancy ordinances.

## DISCUSSION

In this appeal, petitioner challenges Franciscan Ministries' right to establish occupancy limits in the absence of governmental regulation. It is petitioner's belief that only a unit of government may promulgate occupancy limits.

■ The CLC's decision to sustain a dismissal of a human rights violation charge will not be disturbed unless it is arbitrary, capricious, or an abuse of discretion. *Graves v. Chief Legal Counsel of the Department of Human Rights*, 327 Ill. App. 3d 293, 295 (2002).

■ Section 3—102(A) of the Illinois Human Rights Act (Act) (775 ILCS 5/3—102(A) (West 2000)) makes it a civil rights violation for an owner or other person engaging in a real estate transaction to refuse to engage in the transaction because of familial status. Section 3—101(E) of the Act defines familial status as one or more individuals, who have not attained the age of 18 years, being domiciled with a parent having legal custody of such individuals. 775 ILCS 5/3—101(E) (West 2000). Section 3—106(D) of the Act provides an exemption for "[r]easonable local, State, or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling." 775 ILCS 5/3—106(D) (West 2000). Petitioner misconstrues this provision to exclude a private owner's right to limit occupancy. He relies on *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 735 n.9, 131 L. Ed. 2d 801, 811 n.9, 115 S. Ct. 1776, 1782 n.9 (1995), where the United States Supreme Court interpreted the federal Fair Housing Act (42 U.S.C. § 3601 *et seq.* (2000)). The Illinois Act is similar to the federal Fair Housing Act. The federal statute exempts from the Fair Housing Act's scrutiny "[a]ny reasonable local, State, or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling." 42 U.S.C. § 3607(b)(1) (2000)). Petitioner emphasizes the following language from footnote 9 of the *Edmonds* opinion, which states: "Section 3607(b)(1) makes it plain that, pursuant to local prescriptions on maximum occupancy, landlords legitimately may refuse to stuff large families into small quarters." *Edmonds*, 514 U.S. at 735 n.9, 131 L. Ed. 2d at 811 n.9, 115 S. Ct. at 1782 n.9. Petitioner reasons that this language excludes a landlord's right to regulate occupancy in the absence of a "local prescription"; however, in the same footnote,

the Supreme Court pointed out that the exemption was adopted because of Congress's fear that landlords would be forced to allow large families to crowd into small housing units. *Edmonds*, 514 U.S. at 735 n.9, 131 L. Ed. 2d at 811 n.9, 115 S. Ct. at 1782 n.9. Indeed, in enforcing the Fair Housing Act, the Department of Housing and Urban Development has stated, "[t]here is no basis to conclude that Congress intended that an owner or manager of dwellings would be unable to restrict the number of occupants who could reside in a dwelling." Department of Housing and Urban Development Fair Housing Enforcement-Occupancy Standards Notice of Statement of Policy, 63 Fed. Reg. 70256, 70257 (1998). We see no reason to depart from the reasoning in *Edmonds*. In light of the foregoing, we are not persuaded that our legislature intended to curtail a private landlord's right to restrict, independently of familial status, the number of occupants in a dwelling.

■ In our case, the evidence clearly shows that Franciscan Ministries was motivated by its occupancy restriction of seven persons to a three-bedroom unit. Therefore, we cannot say that the CLC's finding that Franciscan Ministries was not motivated by familial status discrimination was an abuse of discretion. Accordingly, we affirm the decision.

## CONCLUSION

For the foregoing reasons, we affirm the order of the CLC dismissing petitioner's charge of familial status discrimination.

Affirmed.

BOWMAN and BYRNE, JJ., concur.